UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
NATHANIEL R. GRANT, :
              Plaintiff, :
: **OPINION AND ORDER**
v. :
: 17 CV 3609 (VB)
SERGEANT HOGUE, BADGE # 193; :
SERGEANT KERR, BADGE # 194; :
CORRECTION OFFICER BELAIR, BADGE :
# 1631; MENTAL HEALTH DEPT. :
COUNSELOR MS. AMYSHELL (IN THEIR :
OFFICIAL & INDIVIDUAL CAPATICIES), :
              Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Nathaniel R. Grant, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983, alleging defendants Sergeant Hogue ("Sgt. Hogue"), Sergeant Kerr ("Sgt. Kerr"), and Correction Officer Belair ("C.O. Belair") (collectively, the "DOC defendants"), and defendant Amy Schell violated his constitutional rights while he was incarcerated at Westchester County Jail ("WCJ").[1]

      Now pending before the Court are two motions to dismiss the complaint pursuant to Rule 12(b)(6), filed separately by the DOC defendants and Schell. (Docs. ##17, 26).

      For the reasons set forth below, the DOC defendants' motion to dismiss is DENIED, and Schell's motion to dismiss is GRANTED.

      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1]     Defendant Schell is incorrectly identified in plaintiff's complaint as "Amyshell." It is clear from the motion to dismiss that her name is "Amy Schell" and the Court will identify her as such throughout this Opinion.

1

**BACKGROUND**

For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor, as summarized below.

At all times relevant to the complaint, plaintiff was incarcerated at WCJ. Plaintiff's claims arise from his interactions with another inmate, non-party Juan Garcia, between November 2015 and November 2016.

First, on November 19, 2015, Garcia accused plaintiff and other individuals at WCJ of sexual assault. Garcia's allegations were investigated and proven false, after which Garcia was put on "Enhance[d] Security Protocol." (Compl. § VI, ¶ 2).

Several months later, in June or July 2016, Garcia "moved back" to plaintiff's cellblock at WCJ, referred to as "1-G-block." (Compl. § VI, ¶ 3). Plaintiff asked several sergeants and correction officers how to avoid further incident with Garcia. To plaintiff's surprise, non-party Sgt. Weston advised there were no "keep separates in D.O.C.'s file" for plaintiff and Garcia. (Compl. § VI, ¶ 4).

A few days after Garcia returned to 1-G-block, he accused plaintiff of stealing his book and "started to attack" plaintiff. (Compl. § VI, ¶ 7). Garcia advanced toward plaintiff threateningly. Sgt. Hogue witnessed this and ordered plaintiff not to react. Plaintiff remained calm and backed away from Garcia while Sgt. Hogue ordered Garcia to stop. However, according to plaintiff, Garcia continued to advance. Sgt. Hogue and other officers then assisted plaintiff, and again removed Garcia from 1-G-block.

Plaintiff explained to Sgt. Hogue that this was his second incident with Garcia, and asked Sgt. Hogue to enter a "keep separate" order. According to the complaint, Sgt. Hogue berated

2

plaintiff with profanities, and stated, "your [sic] a killer so you should be able to handle it." (Compl. § VI, ¶ 8).

The following day, plaintiff spoke with several sergeants about his interaction with Garcia and Sgt. Hogue. He was told Sgt. Hogue had to be the one to enter any keep separate order, because he was on duty when the incident occurred. Plaintiff "left the issue alone," because Garcia had already been removed from 1-G-block. (Compl. § VI, ¶ 9).

Around November 9, 2016, however, Garcia returned to 1-G-block. Plaintiff avoided Garcia, and spent a few days "running around," trying to have Garcia's housing assignment changed. (Compl. § VI, ¶ 10). During this time, plaintiff told Schell, a counselor in the mental health department, about his prior interactions with Garcia. Plaintiff also shared his observation that Garcia was not taking his medication, and seemed "agitated, distant, and very paranoid." (Id.). Schell allegedly confirmed that Garcia was not taking medication. Plaintiff responded that Garcia targeted him when he was off his medication, and asked if Schell could transfer Garcia to the medical unit. Schell told plaintiff she could not do anything to help.

Plaintiff next spoke to Sgt. Kerr, who allegedly advised plaintiff that only the mental health department can order an inmate's transfer to the medical unit.

Plaintiff also told non-party Warden Moccia about his interactions with Garcia. According to plaintiff, Warden Moccia questioned why there was no keep separate order in place, and advised plaintiff to submit a "statement form" to the sergeant on duty. (Compl. §VI, ¶ 12). Plaintiff gave Sgt. Kerr a statement form, after which Garcia was moved to the special housing unit.

3

Nevertheless, Garcia returned to 1-G-block three days later. Plaintiff again spoke to Schell about Garcia. Schell confirmed that although Sgt. Kerr moved Garcia, there was no keep separate order, and told plaintiff, "we just have to see what happens." (Compl. § VI, ¶ 13).

On November 23, 2016, Garcia called plaintiff over to his cell and asked if plaintiff had "a problem with him." (Compl. § VI, ¶ 14). Plaintiff told C.O. Belair about his conversation with Garcia, his prior interactions with Garcia, and his statement form requesting that Garcia be removed from 1-G-block. Plaintiff also informed C.O. Belair that he recently had tendons repaired in his right hand, which had not fully healed.

Shortly thereafter, C.O. Belair let Garcia out of his cell to use the phone. Rather than making a call, Garcia allegedly ran toward plaintiff and punched him multiple times, at least once in the face with a closed fist. Plaintiff, "delusional" from being repeatedly punched, responded by punching Garcia twice with his injured right hand, creating "unbearable" pain. (Compl. § VI, ¶ 16). C.O. Belair and other officers stood by, watching and laughing while plaintiff called for assistance. Plaintiff defended himself until "E.R.T." arrived and took control. (Compl. § VI, ¶ 17).

Since Garcia's attack, plaintiff has had constant pain in his right hand, for which he takes pain medication. (Compl. § VI, ¶ 17).

Plaintiff filed a grievance regarding his interactions with Garcia, which was denied on December 7, 2016. (Opp'n Ex. 2). Plaintiff appealed the denial of his grievance to the WCJ chief administrative officer on December 7, 2016 (Opp'n Ex. 3), and alleges he has "not yet" received a response. (Opp'n ¶ 3).

**DISCUSSION**

I.      Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d

5

162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted).  Nor may the Court "invent factual allegations" plaintiff has not pleaded.  Id.

II.     Failure to Exhaust

Defendants argue plaintiff's complaint should be dismissed based on plaintiff's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

The Court disagrees.

Plaintiff submitted a grievance regarding his interactions with Garcia (Opp'n Ex. 2), and appealed the denial of that grievance to the WCJ chief administrative officer.  (Opp'n Ex. 3).[2] Plaintiff alleges he has "not yet" received a reply to this appeal.  (Opp'n ¶ 3).  Defendants assert plaintiff was required to make a second appeal to the State Commission of Correction when his first appeal went unanswered.

Under the PLRA, inmates are required to exhaust "such administrative remedies as are available."  42 U.S.C. § 1997e(a).  A remedy is unavailable when it is "officially on the books, [but] is not capable of use to obtain relief."  Ross v. Blake, 136 S. Ct. 1850, 1859 (2016).

Title 9 N.Y.C.R.R. § 7032 lists the minimum standards and regulations for grievance programs in local jails.  Unlike Title 7, which governs the grievance process in state prisons, Title 9 does not set forth an appeal process for "matters not decided within the time limits," such as an appeal like plaintiff's, to which there has been no response.  Compare 7 N.Y.C.R.R § 701.6 with 9 N.Y.C.R.R. § 7032.5.

---

[2]     Plaintiff attached his formal grievance and appeal to his opposition brief.  While plaintiff's formal grievance is arguably inconsistent with his allegation that he used the "chain of command" because a sergeant told him there was "not a grievance procedure to use," it is clear plaintiff did avail himself of the grievance process.  (Compl. § IV).

6

To the contrary, Inmate Grievance Form Part II, for the appeal of a denied grievance, states: "Pursuant to 9 NYCRR § 7032.5(a), any grievant may appeal any grievance DENIED by the facility administrator, in whole or in part, to the State Commission of Correction." (Opp'n Ex. 3 (emphasis in original)). The form provides no instruction or mechanism for appealing unanswered appeals, nor does Title 9 N.Y.C.R.R. § 7032.5, which governs appeals to the Commission of Correction.

Thus, on the record before the Court it is not clear the requirement to appeal an unanswered grievance was "officially on the books," such that it was available to plaintiff. Ross v. Blake, 136 S. Ct. at 1859.

Accordingly, at this early stage, the Court declines to dismiss plaintiff's complaint based on a failure to exhaust administrative remedies.

III.     Failure to Protect Claim

The Court construes plaintiff's allegations as a claim that defendants failed to protect him from Garcia's November 23, 2016, attack in violation of the Fourteenth Amendment.

Defendants argue plaintiff fails to state a constitutional violation.

With respect to the DOC defendants, the Court disagrees.

With respect to Schell, the Court agrees.

A.     Legal Standard

A failure to protect claim arises if prison officials act "with deliberate indifference to the safety of the inmate. However, to state a cognizable section 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice." Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (internal quotation and citation omitted).

7

Deliberate indifference claims brought by pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment, because "[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner—neither cruelly and unusually nor otherwise.'" Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (quoting Iqbal v. Hasty, 490 F.3d 143, 168 (2d Cir. 2007)).[3]

To state a claim for deliberate indifference, plaintiff's allegations must satisfy a two-prong test. First, plaintiff must plausibly allege "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process." Darnell v. Pineiro, 849 F.3d at 29. Second, plaintiff must plausibly allege the defendants acted with "at least deliberate indifference to the challenged conditions." Id.

To satisfy the first prong, a pretrial detainee must establish an objective deprivation, by showing "'that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.'" Darnell v. Pineiro, 849 F.3d at 30 (quoting Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013)). "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" Id. (quoting Blissett v. Coughlin, 66 F.3d 531, 537 (2d Cir. 1995)).

When analyzing claims brought by pretrial detainees, the second prong "of a deliberate indifference claim is defined objectively." Darnell v. Pineiro, 849 F.3d at 35 (emphasis added).

---

[3] Defendants' counsel asserts plaintiff was a pretrial detainee at all times relevant to the complaint. (DOC defs.' Br. at 1, 8; Schell Br. at 1). Plaintiff's opposition does not assert otherwise. Thus, although there is some inconsistency between the DOC defendants' brief, and the declaration submitted in support thereof, compare DOC defs.' Br. at 1 n.3 with Chen Decl. ¶ 2, the Court will apply the standard applicable to a pretrial detainee as set forth by the Second Circuit in Darnell v. Pineiro, 849 F. 3d 17 (2d Cir. 2017).

To satisfy the second prong, a "pretrial detainee must prove that the defendant-official acted intentionally . . . or recklessly failed to act with reasonable care to mitigate the risk . . . even though the defendant-official knew, or should have known," of the risk of harm. Id. Thus, unlike the Eighth Amendment, the Due Process Clause of the Fourteenth Amendment "can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." Id.

B. Application

Plaintiff alleges the DOC defendants were aware Garcia had previously threatened and attacked plaintiff, either because they were physically present to witness plaintiff's interactions with Garcia, or because plaintiff reported his interactions with Garcia to them. Plaintiff further alleges he repeatedly asked to be kept separate from Garcia, and defendants failed to follow a protocol that would have prevented Garcia's November 23, 2016, attack.

"A substantial risk of serious harm can be demonstrated where there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by plaintiff regarding the altercation or a request by [a] plaintiff to be separated from the attacker." Rennalls v. Alfredo, 2015 WL 5730332, at *4 (S.D.N.Y. Sept. 30, 2015) (internal quotation omitted); see also Molina v. Cty. of Westchester, 2017 WL 1609021, at *3 (S.D.N.Y. Apr. 28, 2017) ("The failure of a correction officer to oversee prisoners, intervene in an attack, or otherwise fail to abide by prison safety protocols may under certain circumstances create a condition which poses a substantial risk of serious harm thus constituting a sufficiently serious constitutional violation.").[4]

---

4    Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Accordingly, construing plaintiff's allegations liberally and drawing all reasonable inferences in his favor, plaintiff has plausibly alleged an objective deprivation sufficient to satisfy the first prong of the deliberate indifference inquiry as to the DOC defendants.

With respect to the second prong of the inquiry, plaintiff adequately alleges the DOC defendants "recklessly failed to act with reasonable care to mitigate" a known risk of harm. Darnell v. Pineiro, 849 F.3d at 35. "Defendants may be held liable under § 1983 if they . . . exhibited deliberate indifference to . . . a known risk, or a specific duty, and their failure to perform the duty or act to ameliorate the risk or injury was a proximate cause of plaintiff's deprivation of rights under the Constitution." Ortiz v. Goord, 276 F. App'x 97, 98 (2d Cir. 2008); see also, e.g., Rennalls v. Alfredo, 2015 WL 5730332, at *4 (defendant's failure to follow protocol "may have put plaintiff at a substantial risk of serious harm").

Here, plaintiff alleges he told each of the DOC defendants about his interactions with Garcia, but Garcia nevertheless repeatedly was assigned to housing with plaintiff on 1-G-block. Moreover, the Court accepts as true, as it must at this stage, plaintiff's allegation that defendants failed to follow a protocol for addressing "violent assaultive behavior" in the mental health block. (Opp'n ¶ 12). Plaintiff's allegations regarding the protocol are thin, but he asserts if implemented it would have "correct[ed] the wrong" and "prevented the incident." (Id.).

The DOC defendants' argument that C.O. Belair acted reasonably by calling E.R.T. for assistance is unavailing, as it sidesteps plaintiff's assertion that Garcia should not have been allowed to exit his cell and enter an open area with plaintiff in the first place.

Likewise, the DOC defendants' argument that Sgt. Hogue and Sgt. Kerr responded reasonably to the threat by moving Garcia is unpersuasive, because plaintiff alleges Garcia repeatedly was returned to 1-G-block, despite defendants' knowledge of his prior interactions

with plaintiff. Further, plaintiff asserts the DOC defendants failed to follow WCJ's protocol for addressing behavior like Garcia's. Such a protocol, if it exists, would provide a strong indication of the reasonableness of the DOC defendants' actions.

Accordingly, the DOC defendants' motion to dismiss plaintiff's Fourteenth Amendment claim is denied.

However, with respect to defendant Schell, plaintiff's allegations fall short. Plaintiff does not allege Schell had the authority to enter a keep separate order for plaintiff and Garcia, nor does plaintiff allege Schell had control over Garcia's movements to, from, and within plaintiff's cell block. Instead, plaintiff alleges Schell advised "there wasn't anything that she could do to help" plaintiff. (Compl. § 11). Accordingly, defendant Schell's motion to dismiss plaintiff's Fourteenth Amendment claim is granted.

IV.  Qualified Immunity

The DOC defendants argue they are entitled to qualified immunity.

The Court disagrees.

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established;' and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (quoting Taravella v. Town of Wolcott, 599 F.3d 129, 133–34 (2d Cir. 2010)). "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted." Hyman v. Abrams, 630 F. App'x 40, 42 (2d Cir. 2015) (summary order).

Here, plaintiff has sufficiently alleged the DOC defendants violated his Fourteenth Amendment rights, which were clearly established at the time, and it was not on its face reasonable for defendants to believe they could lawfully violate those rights. Accordingly, dismissing plaintiff's claims at this stage of the case based on qualified immunity is inappropriate. Again, this is an issue that may be reviewed at summary judgment after the completion of discovery.

V.      Claims First Asserted in Plaintiff's Opposition Brief

Plaintiff's opposition brief purports to assert an equal protection claim. Plaintiff alleges defendants discriminated against him on the basis of his being "confined to a mental health block." (Opp'n ¶ 9). Plaintiff did not raise these allegations, or state facts remotely resembling these allegations, in his complaint.

Defendants argue the Court should not consider claims raised for the first time in plaintiff's motion papers.

In general, matters outside the pleadings should not be considered "in deciding a motion to dismiss the complaint for failure to state a claim." Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 202 (2d Cir. 2013). Because plaintiff is proceeding pro se, "it is appropriate . . . to consider factual allegations made in [his] opposition papers, so long as the allegations are consistent with the complaint." Kelley v. Universal Music Grp., 2016 WL 5720766, at *6 (S.D.N.Y. Sept. 29, 2016). In analyzing plaintiff's compliance with the PLRA, and the legal sufficiency of plaintiff's claims regarding defendants' failure to protect him from a substantial risk to his safety, the Court has done just that.

However, plaintiff's discrimination claim is unrelated to the factual allegations in the complaint. Accordingly, it will not be considered. See, e.g., Mira v. Argus Media, 2017 WL 1184302, at *3 (S.D.N.Y. Mar. 29, 2017).

## CONCLUSION

Defendants Hogue, Kerr, and Belair's motion to dismiss (Doc. #17) is DENIED.

Defendant Schell's motion to dismiss (Doc. #26) is GRANTED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the pending motions (Docs. ##17, 26, 31), and terminate defendant Amy Schell (sued herein as "Amyshell").

Dated: January 22, 2018
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge